FILED

JUN 1 5 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

EDWARD L. DAVIS,

   Plaintiff,

               CV-07-6352-PK

               FINDINGS AND
v.              RECOMMENDATION


COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

   Defendant.
_____

PAPAK, Magistrate Judge:

   Plaintiff Edward L. Davis filed this action against defendant Michael A. Astrue,

Commissioner of Social Security, on December 5, 2007. Davis sought review of the

Commissioner's decision finding him not disabled for purposes of entitlement to Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. On March 9,

2009, I recommended that the Commissioner's decision be reversed and the action remanded to

the Social Security Administration for calculation and award of DIB and SSI benefits. On May

5, 2009, Judge Haggerty adopted my recommendation without modification. Davis moved for an

award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA"), and on July 6,

2009, Judge Haggerty entered an award of attorney fees in Davis' favor in the amount of

$7,499.00.

Page 1 - FINDINGS AND RECOMMENDATION

On September 23, 2009, Davis' legal counsel moved for approval of additional payment of attorney fees out of Davis' retroactive benefits award, pursuant to 42 U.S.C. § 406(b). Based on the evidentiary record counsel had created, on November 24, 2009, I recommended that the motion be denied. On November 25, 2009, counsel moved to augment the record, and Judge Haggerty construed the motion as a request to present additional evidence and as a motion for reconsideration. Now before the court, therefore, is counsel's motion (#48), construed as a request to present additional evidence and a motion for reconsideration of my previous recommended disposition of counsel's motion for Section 406(b) attorney fees. I have considered the motion and all of the evidence in the record. For the reasons set forth below, the motion should be granted, and payment to Davis' counsel of $8,642.25 out of Davis' past-due benefits award should be approved.

**ANALYSIS**

**I.    Request to Present Additional Evidence**

I initially recommended denial of counsel's originally filed motion for Section 406(b) attorney fees based on the fact that the evidentiary record was void of evidence that Davis and his counsel had ever entered into a contingency fee agreement providing for payment to counsel of 25% of Davis' retroactive benefits award. Counsel now seeks to offer his contingency fee agreement and notice of Davis' benefits award into the evidentiary record.

Counsel's construed motion for reconsideration is governed by Federal Civil Procedure Rule 60(b), which "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." *Fuller*

Page 2 - FINDINGS AND RECOMMENDATION

*v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *see also* Fed. R. Civ. P. 60(b).

It is clear that the evidence with which counsel seeks to "augment" the record is not in any sense "newly discovered," as it was patently available at the time the original motion for Section 406(b) attorney fees was filed. *See, e.g., Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 212 (9th Cir. 1987) ("Evidence is not 'newly discovered' under the Federal Rules if it was in the moving party's possession [prior to the judgment as to which reconsideration is requested] or could have been discovered with reasonable diligence"), *citing Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963). Moreover, the third through sixth sets of circumstances enumerated both in Rule 60(b) and in the *Fuller* court's opinion are clearly inapplicable here. Thus, the court may consider the offered evidence only if it was excluded from the record due to "mistake, surprise, or excusable neglect." Fed. R. Civ. P. 60(b).

In explanation for his failure to offer evidence of the existence of a valid fee agreement in support of his argument that he was entitled to payment as though such an agreement were in effect, counsel offers only that he was unaware that he might be called upon to meet his burden of proof. The courts of the Ninth Circuit apply the standard for determining whether excusable neglect is applicable set forth by the United States Supreme Court acccording to the following framework:

> Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), and includes "omissions caused by carelessness," *id.* at 388. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. To determine when neglect is excusable, we conduct the equitable analysis specified in *Pioneer* by examining "at least four factors: (1) the danger of prejudice to the

opposing party; (2) the length of the delay and its potential impact on the
proceedings; (3) the reason for the delay; and (4) whether the movant acted in
good faith." *Bateman* [*v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir.
2000)], (*citing Pioneer*, 507 U.S. at 395). Although *Pioneer* involved excusable
neglect under Federal Rule of Bankruptcy Procedure 9006(b), in *Briones v.
Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997), we concluded that the
*Pioneer* standard governs analysis of excusable neglect under Rule 60(b)(1). *See
id.* at 381.

*Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

Here, no party opposes counsel's motion, so the danger of prejudice to the opposing party

is minimal or nonexistant.  Once his omission had been brought to his attention, counsel acted

without delay to correct it, and the delay has had and can have had no prejudicial impact on these

proceedings.  Moreover, there is no indication that counsel acted in bad faith.

Although the reason offered in explanation of the omission is troubling, taken together

the four factors mitigate in favor of considering the newly offered evidence.  I therefore

recommend that the court accept counsel's evidentiary offer, and consider the offered evidence in

connection with counsel's motion for Section 406(b) attorney fees.

## II.    Reconsideration of the Merits of the Motion in Light of Newly Offered Evidence

In the analysis that follows, I assume that the court will adopt my recommendation, set

forth above, that the court consider the evidence counsel offers in support of his motion for

Section 406(b) attorney fees.  In the event the court does not adopt my recommendation

regarding counsel's newly proffered evidence, the motion for reconsideration should be denied

for the reasons set forth in my Findings and Recommendation (#45) of November 24, 2009.

Pursuant to 42 U.S.C. § 406(b), Davis' counsel seeks the court's approval of payment to

him of attorney fees out of Davis' retroactive benefits award in the amount of $8,642.25

(calculated by subtracting $7,499.00, the amount of the EAJA attorney fee award counsel has

Page 4 - FINDINGS AND RECOMMENDATION

already received, from $16,141.25, which counsel asserts constitutes 25% of Davis' retroactive

benefits award).  Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this
> subchapter who was represented before the court by an attorney, the court may
> determine and allow as part of its judgment a reasonable fee for such
> representation, not in excess of 25 percent of the total of the past-due benefits to
> which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A).  By contrast with fees awarded pursuant to the EAJA, a fee-shifting

statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful

Social Security claimant.  *See id.*  Counsel representing Social Security claimants may not seek

compensation from their clients for trial litigation other than through a Section 406(b) fee.  *See*

*id.*  In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved,

the claimant's counsel must refund to the claimant the amount of the smaller of the two

payments.  *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002).  Any Section 406(b) fee must

be approved by the court following analysis of its reasonableness before it may be paid.  *See* 42

U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b)

contingency fee is not to be determined primarily by reference to the lodestar method which

governs fee-shifting disputes.  *See Gisbrecht*, 535 U.S. at 801-802.  Instead, to the extent

contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive

benefits, their terms are fully enforceable subject only to the court's review "to assure that they

yield reasonable results in particular cases."  *Id.* at 807.  It is the claimant's counsel's burden to

establish the reasonableness of the calculated fee.  *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the

contingency fee agreement itself, and then may reduce the resulting award "based on the

character of the representation and the results the representative achieved." *Id.* at 808.  The

*Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction,

situations in which the attorney was responsible for delay or in which "the benefits are large in

comparison to the amount of time counsel spent on the case." *Id.*  The court specified that "the

court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an

aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a

record of the hours spent representing the claimant and a statement of the lawyer's normal hourly

billing charge for noncontingent-fee cases." *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741

(6th Cir. 1989) (*en banc*).

The Ninth Circuit recently issued an *en banc* decision, *Crawford v. Astrue*, 586 F.3d 1142

(9th Cir. 2009), addressing the Section 406(b) reasonableness analysis under *Gisbrecht*.  The

*Crawford* court reviewed the consolidated appeals of three different actions in which district

courts reduced Section 406(b) fees from the amounts requested.  In the first of these, claimant

Clara Crawford was represented by attorney Brian Shapiro.  *See Crawford*, 586 F.3d at 1144.

The Administration initially denied Crawford's application for benefits, but following litigation,

ultimately awarded her $123,891.20 in past-due benefits.  *See id.* at 1145.  Although Shapiro and

Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee,

Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits,

representing an amount 3.55 times the amount that would have resulted from a lodestar

calculation.  *See id.*  The district court found no evidence of fraud or over-reaching in the

negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that

Shapiro's lodestar calculations were correct. *See id.* However, the district court found that

Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure

was reasonable, because he had not presented evidence of his own firm's success rate in

representing Social Security claimants (as opposed to data regarding the success rate of Social

Security claimants generally) and because Crawford's attorneys' skill and experience were already

reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40%

"enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of

$8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

   In the second action of the consolidated appeal, claimant Ruby Washington was

represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration

initially denied Washington's application for benefits, but following litigation, awarded

$76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a

contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only

$11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the

amount that would have resulted from a lodestar calculation. *See id.* The district court found no

evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused

no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146.

However, as for Crawford, the district court found that Cho had not met his burden to show that

the requested "enhancement" of the lodestar figure was reasonable, because he had not presented

evidence of his own firm's success rate in representing Social Security claimants, because

Washington's attorneys' skill and experience were already reflected in the lodestar figure, and

because Cho had not been required to do much work to obtain benefits on Washington's behalf.

*See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases, the Administration initially denied Trejo's application for benefits, but following litigation, awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had entered into a contingency fee agreement that provided for a 25% contingency fee, Haley requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Haley had caused no unnecessary delay and that her representation had been excellent, and that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See id.* However, as for Crawford and Washington, the district court found that Haley had not met her burden to show that the requested fee was reasonable, because she had not presented evidence of her own firm's success rate in representing Social Security claimants, because Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because Haley had not presented evidence that Haley's firm had been precluded from accepting other work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly beginning with the lodestar calculation and determining a reasonable fee award by applying enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at 1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Administration initially rejected Davis' application for DIB and SSI benefits, only to award retroactive benefits following litigation. Davis' counsel's arguments presuppose that Davis' retroactive benefits were awarded in the amount of $64,565. While I do not find that

Page 9 - FINDINGS AND RECOMMENDATION

the evidence counsel has offered into the record supports the conclusion that Davis received

$64,565 in retroactive benefits, in light of the Administration's failure to object to counsel's

motion, I accept for purposes of this motion that the retroactive benefits award was in the amount

of $64,565.  As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Davis entered into a

contingency fee agreement with his counsel providing for payment of 25% of Davis' retroactive

benefits to his attorney.  It therefore now falls to me to assess whether $16,141.25, or 25% of the

retroactive benefits award, constitutes reasonable compensation for Davis' counsel under the

various factors discussed in *Gisbrecht* and *Crawford*.

### A.     Character of the Representation

#### 1.     Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal

representative warrants a reduction in a Section 406(b) fee award.  *See Gisbrecht*, 535 U.S. at

808; *Crawford*, 586 F.3d at 1151.  Here, as Davis' counsel emphasizes, he filed a voluminous

opening brief (#16) in this matter, as well as a short reply brief (#24).  The Administration

conceded one of the assignments of harmful error contained in Davis' opening brief, and argued

only that the case should be remanded for further proceedings.  The court disagreed with the

Administration and agreed with Davis that the appropriate disposition was to find Davis disabled

and to remand the case for award of benefits only.

Davis' opening brief set forth a form of the legal argument upon which the court

ultimately relied in making its decision.  In addition, the brief described Davis' medical history

accurately and in detail.  No reduction in the Section 406(b) fee is therefore warranted due to the

character of Dasis' legal representation.

Page 10 - FINDINGS AND RECOMMENDATION

2.      **Dilatoriness**

A Section 406(b) award may properly be reduced if any delay in proceedings is properly

attributable to the claimant's counsel.  *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at

1151.  Here, the record does not suggest that Davis' counsel was responsible for any

unreasonable delay of these proceedings.  No reduction in the Section 406(b) fee is warranted on

the basis of dilatory performance.

B.      **Proportionality of Benefits Awarded to Attorney Time Spent**

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be

reduced if the benefits awarded to the Social Security claimant were out of proportion to the time

spent by the claimant's attorney.  *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151.

Although neither court's opinion provides significant guidance as to how to measure such

disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586

F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal

hourly fee in non-contingent matters could be considered in this connection, but only as an "aid"

in assessing the reasonableness of the award provided in the contingency fee agreement.

Considered in isolation, the product of the lodestar calculation can at best be of extremely

limited utility in assessing the reasonableness of a contingency fee.  The lodestar method of

calculating fees is designed for use where it is intended that an attorney be compensated strictly

for time expended and not on the basis of results achieved, milestones reached, or any of the

myriad other bases by which clients may permissibly compensate their legal representatives, and

where the probability of nonpayment is both low and unrelated to the attorney's ultimate success

or failure.  By contrast, the method authorized under Section 406(b) is one designed to

compensate attorneys commensurately with results achieved. As a matter of logic, the fact (standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested, since that fee is always a maximum of 25% of the retroactive benefits award, and must necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit, at least in the abstract, that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[1] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the

---

[1] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 where the probability of a favorable outcome was 25%, or one in four.

compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to this risk-assessment metric.[2]

Davis' counsel expended 47.85 hours in connection with litigating Davis' application for DIB and SSI benefits. To give effect to the contingency fee arrangement in place between Davis and his counsel would thus yield an effective hourly rate of $337.33 (25% of $64,565 is $16,141.25; the quotient of $16,141.25 and 47.85 hours is $337.33 per hour).

Davis' counsel does not advise the court as to his normal hourly rate, if any, for non-

---

[2] Davis' counsel argues in favor of a different metric for determining proportionality. Specifically, Davis' counsel relies on whose provenance is unclear, at least one indefensible premise, and a patent mathematical solipsism to conclude that an effective hourly rate of $824.07 would be necessarily reasonable. However, because his analysis establishes only that, on the basis of certain unproven assumptions, compensation at a rate of $824.07 could bring his average compensation (including compensation in other cases not here at issue) into line with other Portland-area practitioners' average compensation, without regard to whether compensation at such a rate could be reasonable in this case, I reject his proposed metric as unhelpful to the analysis the court is called upon to perform.

Page 13 - FINDINGS AND RECOMMENDATION

contingent matters.  I take judicial notice that the Oregon State Bar Economic Surveys provide

information as to rates prevalent in various Oregon legal communities in the years in which

survey data are collected.  I further take judicial notice that the Oregon State Bar 2007 Economic

Survey provides information as to rates actually charged by Oregon attorneys in 2006.

According to the 2007 Economic Survey, the median hourly rate charged by Portland-area

attorneys practicing in "other" areas of private practice in 2006 was $222.  An appropriate

method for adjusting the foregoing rate for inflation in order to estimate the corresponding rates

prevalent in the Portland legal community in 2007, 2008 and 2009, when this action was

litigated, is to multiply the 2006 rate times the consumer price index for urban consumers

("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by

the CPI-U for 2006.  I take judicial notice that the United States Department of Labor's Bureau of

Labor Statistics has published a CPI-U for the Western states of 205.7 for 2006, 212.230 for

2007, 219.646 for 2008, and 218.822 for 2009.  On this method, the estimated median hourly

rates for legal services charged by Portland-area attorneys practicing in "other" areas of private

practice would therefore be $229.05 in 2007, $237.05 in 2008, and $236.16 in 2009.  The

requested hourly rate of $337.33 is thus the equivalent of 1.47 times the estimated median hourly

rate for 2007, 1.42 times the estimated median hourly rate for 2008, and 1.43 times the estimated

median hourly rate for 2009.  The reciprocal of 1.47 is approximately 0.68, the reciprocal of 1.42

is approximately 0.7, and the reciprocal of 1.43 is approximately 0.7; thus, the requested fee

award would be clearly proportionate to the time spent if the pre-litigation risk of an adverse

result was assessible at not less than approximately 30%.

      Ideally, a 406(b) fee petitioner would provide in support of his or her petition, in addition

to evidence of the total retroactive benefits award, a contemporaneously prepared record of time expended, and a statement of the attorney's normal hourly fee in non-contingent matters, some form of statement of the attorney's pre-litigation assessment of the risk the attorney undertook in agreeing to represent the Social Security claimant that an unfavorable result would occur, resulting in no compensation for the attorney's services. Here, I have no information as to Davis' counsel's pre-litigation assessment of the risk presented by Davis' Social Security claim. From my own perspective as the judge to whom Davis' request for judicial review was presented, I would rate Davis' claim as significantly less risky than the average Social Security claim. However, because every legal action necessarily carries a degree of risk, and because every Social Security claimant faces a difficult burden in overcoming the deference to which an Administrative Law Judge's decision is entitled, I would estimate the risk of an unfavorable outcome that Kovacevic's counsel undertook at the time he agreed to represent his client as at or higher than 30%. On that basis, I conclude that compensation at an effective hourly rate of $337.33 would not disproportionately overcompensate Davis' counsel for the risk Davis' Social Security claim presented. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

## C.    Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Davis and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the fee provided therein is reasonable. Davis' motion for approval of Section 406(b) fees should be granted, and Davis' counsel should be permitted to retain as a reasonable attorney's fee the total

amount of $8,642.25 ($64,565 * 0.25 - $7,499) from the gross amount of Davis' retroactive benefits award.

## CONCLUSION

For the reasons set forth above, the motion (#48) for reconsideration should be granted, the motion (#38) for Section 406(b) attorney fees should be granted, and payment to Davis' counsel of $8,642.25 out of Davis' retroactive benefits award should be approved.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 15th day of June, 2010.

Honorable Paul Papak
United States Magistrate Judge